## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JEREMY RAPER, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION |
| | ) | FILE No.: |
| v. | ) | |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

---

## **COMPLAINT FOR DAMAGES**

**COMES NOW,** JEREMY RAPER, and submits this Complaint for Damages against Defendant Georgia Department of Transportation ("DOT") for violations of the Title I of the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12112 et seq. ("ADAAA"), seeking back pay and lost economic benefits of employment, liquidated damages, compensatory damages, and reasonable attorney's fees and costs of litigation.

### **Jurisdiction and Venue**

1.

Mr. Raper's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a) and 42 U.S.C. § 2000e-5(f)(3).

2.

The violations of Mr. Raper's rights occurred in the Northern District of Georgia. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c), as every act of which Mr. Raper complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

3.

The State of Georgia has waived sovereign and 11th Amendment immunity by virtue of enacting the Fair Employment Practices Act, OCGA § 45–19–20 *et seq.* *Williamson v. Dep't of Hum. Res.*, 258 Ga. App. 113, 116, 572 S.E.2d 678, 681 (2002).

## **Parties**

4.

Mr. Raper is a citizen of the State of Georgia, residing in Henry County, Georgia. At all times relevant hereto, Mr. Raper was employed by the Defendant.

5.

Defendant DOT is an arm of the State of Georgia and is subject to the jurisdiction of this Court. It may be served with process by service upon the DOT's Commissioner or by personally serving a person other than the Commissioner, authorized to receive service on behalf of the DOT, in the Commissioner's office in

the Department of Transportation, One Georgia Center, 600 West Peachtree Street

NW, Atlanta, Fulton County, Georgia 30308.

6.

Defendant DOT is an employer within the meaning of the ADAAA, 42 U.S.C.

§ 12111(5).

7.

Mr. Raper was a "qualified individual with a disability" as that term is used

and defined by the ADAAA, 42 U.S.C. § 12102(1) and § 12111(8).

### **Administrative Proceedings**

8.

Mr. Raper timely filed a charge of discrimination against Defendant DOT

with both the United States Equal Employment Opportunity Commission ("EEOC")

and the Georgia Commission on Equal Opportunity ("GCEO").

9.

The GCEO assigned the claim to the EEOC to be investigated.

10.

Counsel for Mr. Raper received a Notice of Right to Sue from the EEOC on

or about March 21, 2022 (within the last ninety (90) days) and Mr. Raper has

otherwise complied with all other conditions precedent to the assertion of Mr.

Raper's claims under the ADAAA.

**Statement of Facts**

11.

Mr. Raper interviewed for a position with the DOT on or about December 21, 2017.

12.

During his initial interview, Mr. Raper informed the HR Specialist (Walt Casteel) and the Assistant Manager for HERO (Andrew Todd) that he suffered from PTSD, ADHD, dyslexia, and had a disability regarding reading and comprehension.

13.

Mr. Raper requested and discussed accommodations being provided under the ADA and under Section 504 of the Rehabilitation Act.

14.

As part of those accommodations, written tests were read aloud to Mr. Raper.

15.

The training staff and supervisors were made aware of Mr. Raper's disabilities, and even at this point, some supervisors were not supportive of Mr. Raper due to his disabilities.

16.

Mr. Raper was hired as a full time HERO Operator on or about October 1, 2018. As a HERO Operator, Mr. Raper spent a majority of his time driving on Georgia roads in a vehicle to assist motorists and help with road accidents.

17.

Throughout his time with DOT, Mr. Raper has requested that he be accommodated with additional help in reading and understanding materials related to his job, including verbal explanations and help with understanding how policies such as the employee disciplinary points system operated with regard to his driving accidents.

18.

DOT employs a point matrix system to impose discipline for employees who are involved in driving incidents.

19.

According to that policy, employees who accumulate 1-2 points due to disciplinary infractions will receive a memorandum of concern.

20.

Employees who receive 3 points will receive a letter of reprimand.

21.

Employees who accumulate 4 or 5 points will receive a letter of reprimand and a performance improvement plan.

{Doc: 03047678.DOCX}                5

22.

Employees who accumulate 6 or 7 points are subject to suspension without pay for one week and a performance improvement plan.

23.

The accumulation of 8 points will result in the recommendation of termination from employment.

24.

Mr. Raper was terminated on or about April 1, 2020, for purportedly receiving eight (8) points.

25.

However, Mr. Raper was never placed on a performance improvement plan and never was suspended without pay for one week, per the policy.

26.

Additionally, Mr. Raper had been informed he only had four (4) points.

27.

In terminating Mr. Raper, GDOT created points for incidents that he should have not received points for according to DOT's policy.

28.

Mr. Raper was treated differently than his non-disabled peers in this regard.

29.

{Doc: 03047678.DOCX}                    6

Mr. Raper's non-disabled peers were involved in accidents similar to Mr. Rapers for which they were awarded no points or lesser points.

30.

Mr. Raper's non-disabled peers were not terminated despite being involved in accidents similar to those of Mr. Raper.

31.

For example, points incurred during training were not carried over to full time employment with Mr. Raper's non-disabled peers, whereas Mr. Raper was charged with points incurred during training.

32.

Moreover, Mr. Raper was assigned points for accidents where Mr. Raper was determined to be not at fault, contrary to DOT policy. Mr. Raper's non-disabled peers were not assigned points for accidents in which they were determined to be not at fault.

33.

In one instance, Mr. Raper was outside of his work truck placing traffic cones to mark off an accident scene when his hand was struck by a passing vehicle. DOT officially reported this incident as "no injuries" and reprimanded Mr. Raper for not having his boots zipped.

34.

In another instance, Mr. Raper was involved in an accident where he backed his vehicle into a fixed object.

35.

DOT policy calls for the application of one point; Mr. Raper was penalized two points.

36.

Mr. Raper's non-disabled peers were not assigned two points for similar accidents involving the striking of fixed objects.

37.

During his employment with DOT, Mr. Raper was subjected to severe and persistent harassment regarding his disabilities.

38.

In January of 2019, Ricky Beam, Supervisor, said, "You're a fucking retard" to Mr. Raper while on the job.

39.

On February 13, 2019, Mr. Raper had to request a shift transfer on the grounds that his supervisors were belittling him and that it was an unprofessional work environment.

40.

On May 15, 2019, on I-285 at Buford Highway, Robert Daniels, Supervisor, screamed and belittled Mr. Raper regarding an incident at work involving following another HERO unit and possessing a cell phone.

41.

On July 19, 2019, Mr. Raper provided a doctor's note requesting an accommodation to not wear knee pads due to psoriasis. Jeff Dixon, Assistant Manager said, "That's [the doctor's note] just a bullshit excuse for you to not wear your knee pads." The taunting went on until Mr. Raper was compelled to show him his legs. After seeing Mr. Raper's legs, Mr. Dixon said, "Oh shit, that is fucked up… what you have on your legs."

42.

On August 1, 2019, Brandon Newton and Henry Kinds made discriminatory statements to Mr. Raper, including "Wow, look at that, the little retard can go.."

43.

On September 2, 2019, during Mr. Raper's Savannah deployment for the hurricanes, Jeff Dixon stated "You look as stupid as you talk."

44.

In January of 2020, Henry Kines, brought Mr. Raper into his office and accused him of "making up calls" despite interoffice communications indicating that

"[Mr.] Raper had the most assists for his assigned DOT unit again this month", and he had just been awarded a new truck (450) for his performance at work.

45.

On March 26, 2020, Mr. Raper was talking about the coronavirus and suggested the individuals in the office should be wearing masks since we were within six feet of each other. Jeff Dixon started yelling at Mr. Raper and belittling him.

46.

Routinely, Henry Kines would tell Mr. Raper he was stupid and otherwise belittle him, alone and in front of other co-workers.

47.

Mr. Raper reported these instances to the HERO Manager and the Assistant Managers and requested that they investigate and take efforts to address the discrimination against him.

48.

Instead, his supervisor began accosting him and asking why he had reported the instances.

49.

This was also reported to human resources.

50.

To the best of Mr. Raper's understanding and request for documentation, no investigation was actually performed by human resources, and the discriminatory statements and comments continued unabated, creating a hostile work environment for Mr. Raper.

51.

Mr. Raper was performing his job well, despite a persistent and severe hostile work environment where Mr. Raper was belittled due to his disabilities.

52.

The DOT, without substantial justification and in violation of its own policies regarding the employee "points system," fired Mr. Raper because of his disabilities.

53.

Mr. Raper engaged in the protected activity of reporting incidents of harassment, and discrimination with regards to his unfair and hostile treatment and the points that he received for minor infractions.

54.

He made complaints to GDOT human resources in an attempt to end the unfair and severely hostile work environment caused by his Supervisors and coworkers who constantly used derogatory terms towards Mr. Raper due to his disabilities.

55.

Mr. Raper also submitted a formal complaint against Mr. Eugene Davenport regarding a June 5, 2019, incident where Mr. Raper was injured on the job. His elbow was struck by a moving vehicle while he was rendering aid to a motorist. Mr. Davenport began harassing Mr. Raper about wearing elbow pads rather than focusing on Mr. Raper's personal safety.

56.

Despite these complaints of harassment, discrimination and unfair treatment, DOT failed to take any corrective action.

57.

Instead, and in contravention of its own policy, DOT terminated Mr. Raper's employment.

58.

The entirety of the record indicates that Mr. Raper was treated differently and ultimately terminated because he was disabled and because he complained about harassment regarding his disability and the hostile work environment fostered by DOT.

## COUNT I: FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADAAA

### 59.

At all relevant times, DOT has been subject to the requirements of the ADAAA.

### 60.

At all times relevant, Mr. Raper was a qualified individual with a disability and was an employee of DOT.

### 61.

Mr. Raper had a physical or mental impairment that substantially limited one or more life activities, including learning, reading, concentrating, thinking, and communicating.

### 62.

Mr. Raper had a record of a physical or mental impairment that substantially limited one or more life activities.

### 63.

The DOT regarded Mr. Raper as having a physical or mental impairment that substantially limited one or more life activities.

### 64.

However, Mr. Raper could perform the essential functions of his job with the DOT with or without a reasonable accommodation.

{Doc: 03047678.DOCX}                    13

65.

Mr. Raper made reasonable requests for accommodation by requesting that he be accommodated with additional help in reading and understanding materials related to his job, including verbal explanations.

66.

While the DOT did provide certain accommodations for test taking when Mr. Raper applied to his position with the DOT, it failed to provide reasonable accommodation when Mr. Raper was actually performing his job for the DOT.

67.

The DOT had available to it technology that could have assisted Mr. Raper through verbal rather than written instruction and communication, yet refused to provide the same to Mr. Raper.

68.

This accommodation would not have been an undue burden to the DOT.

69.

The DOT intentionally discriminated against Mr. Raper by, among other things, failing and refusing to engage in the interactive process and not accommodating her request for accommodations, including but not limited to providing verbal assistance with the performance of his duties or utilizing technology to assist in communication with him.

70.

By denying Mr. Raper reasonable accommodations, DOT discriminated against him because of his disabilities and violated his rights under the ADAAA.

71.

As a direct and proximate result of DOT's intentional discrimination and failure and refusal to accommodate Mr. Raper, he suffered out of pocket losses and was deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

72.

DOT's actions caused Mr. Raper to suffer damages of embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT II: RETALIATION IN VIOLATION OF THE ADAAA

73.

At all relevant times, DOT has been subject to the requirements of the ADAAA.

74.

At all times relevant, Mr. Raper was a qualified individual with a disability and was an employee of DOT.

75.

Mr. Raper had a physical or mental impairment that substantially limited one or more life activities, including learning, reading, concentrating, thinking, and communicating.

76.

Mr. Raper had a record of a physical or mental impairment that substantially limited one or more life activities.

77.

The DOT regarded Mr. Raper as having a physical or mental impairment that substantially limited one or more life activities.

78.

However, Mr. Raper could perform the essential functions of his job with the DOT with or without a reasonable accommodation.

79.

Mr. Raper engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy rights under the ADAAA, including but not limited to, requesting a reasonable accommodation for his disabilities and complaining about harassment and hostile treatment by supervisors and co-workers on the basis of his disabilities.

80.

DOT Defendant subjected Mr. Raper to adverse employment actions including, but not limited to, denying his requests for reasonable accommodations, allowing harassment on the basis of Mr. Raper's disabilities to occur and continue, failing to investigate or remediate his claims of discrimination and retaliation, punishing him with points that he should not have been awarded, treating him more harshly than his non-disabled peers, and, ultimately, wrongfully terminating him.

81.

DOT's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because he has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

82.

As a direct and proximate result of DOT's retaliation, he suffered out of pocket losses and was deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

83.

DOT's actions caused Mr. Raper to suffer damages of embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE ADAAA

84.

At all relevant times, DOT has been subject to the requirements of the ADAAA.

85.

At all times relevant, Mr. Raper was a qualified individual with a disability and was an employee of DOT.

86.

Mr. Raper had a physical or mental impairment that substantially limited one or more life activities, including learning, reading, concentrating, thinking, and communicating.

87.

Mr. Raper had a record of a physical or mental impairment that substantially limited one or more life activities.

88.

The DOT regarded Mr. Raper as having a physical or mental impairment that substantially limited one or more life activities.

89.

However, Mr. Raper could perform the essential functions of his job with the DOT with or without a reasonable accommodation.

90.

The DOT was aware of Mr. Raper's disabilities.

91.

The DOT subjected Mr. Raper to adverse employment actions including, but not limited to, denying his requests for reasonable accommodations, allowing harassment on the basis of Mr. Raper's disabilities to occur and continue, failing to investigate or remediate his claims of discrimination and retaliation, punishing him with points that he should not have been awarded, treating him more harshly than his non-disabled peers, and, ultimately, wrongfully terminating him.

92.

The DOT's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

93.

As a direct and proximate result of DOT's intentional discrimination Mr. Raper, he suffered out of pocket losses and was deprived of job-related economic

benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

94.

DOT's actions caused Mr. Raper to suffer damages of embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays:

(a)     That he have a trial by jury;

(b)     That he be granted Judgment in his favor and against DOT on all Counts of this Complaint;

(c)     That the DOT be Ordered to make the Plaintiff whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of DOT unlawful and discriminatory acts, together with interest thereon, all in an amount to be proved at trial;

(d)     That the DOT be Ordered to pay statutory penalties and damages;

(e)     That the Defendant be Ordered to compensate Plaintiff for mental and emotional damages suffered as a result of DOT's unlawful and discriminatory acts;

(f)     That he be granted punitive damages for DOT's willful and intentional

violations of the ADAAA as provided by 42 U.S.C. §§ 1981a and 12117(a);

(g)     That he be granted his reasonable attorney's fees and expert witness

fees together with any and all other costs associated with this action as provided by

42 U.S.C. §§ 12205 and 12117(a); and

(h)     That she be granted such other and further additional relief as this Court

deems equitable and just.

Respectfully submitted, this 26th day of May, 2022.

*/s/ Grant E. McBride*
Grant E. McBride
Georgia Bar No. 109812
Attorney for Plaintiff

**SMITH WELCH WEBB & WHITE, LLC**
Post Office Box 10
2200 Keys Ferry Court
McDonough, GA  30253
(770) 957-3937 phone
(770) 957-9165 facsimile
gmcbride@smithwelchlaw.com